# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Rajahn Brown    :
         :
    **Plaintiff,** :
  v.       :   **Civil Action No. 19-2303 (CKK)**
         :
Executive Office for  :
United States Attorneys, :
         :
    **Defendant.** :

## MEMORANDUM OPINION

Plaintiff brought this action *pro se* to compel records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the Executive Office for United States Attorneys ("EOUSA"). Defendant has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure [Dkt. # 29]. For the reasons explained below, the motion will be granted.

## I.  BACKGROUND

Plaintiff pled guilty in the U.S. District Court for the Eastern District of North Carolina "to conspiracy to possess with intent to distribute heroin and marijuana, two counts of possession with intent to distribute and distribution of heroin, and possession with intent to distribute marijuana and MDMA/Ecstasy." *United States v. Brown*, 650 Fed. App'x 836 (4th Cir. 2016) (per curiam). He is serving a prison term of 204 months, *see id*. (affirming sentence), currently at the Federal Correctional Institution in Petersburg, Virginia.

On November 19, 2018, in a FOIA request to EOUSA, plaintiff sought essentially all information pertaining to his criminal case. *See* Decl. of Natasha Hudgins ("Hudgins Decl.") [Dkt. # 29-3], Ex. A (FOIA Request). EOUSA acknowledged the request by letter of March 1, 2019, and at some point "asked the U.S. Attorney's Office for the Eastern District of North

Carolina ("USAO-NCE") to conduct a search for [responsive] records."[1]  Hudgins Decl. ¶¶ 8-9.

"USAO-NCE personnel conducted a search for responsive records, by searching for 'Rajahn

Brown' and 'Brown' in the CaseView system, using the same search terms to locate any

responsive emails, and locating and retrieving the Rajahn Brown criminal case file."  *Id*. ¶ 10.

On May 20, 2019, EOUSA "received the search results from the USAO-NCE with all responsive

records for review."  *Id*. ¶ 13.  The search located "approximately 1,500 pages."  *Id*. ¶ 15.

On July 29, 2019, plaintiff, having received no records, filed this civil action.  Thereafter,

on February 13, 2020, and August 26, 2020, EOUSA released records to plaintiff.  In total,

EOUSA released 1,028 unredacted pages and 77 redacted pages; it withheld 321 pages

completely.  *Id*. ¶¶ 14, 18.  EOUSA withheld information under FOIA exemptions 3, 5, 6, and

7(C), codified in 5 U.S.C. § 552(b), and certain records pursuant to a sealing order of the U.S.

Court of Appeals for the Fourth Circuit.  *Id*. ¶¶ 22-44 & attached *Vaughn* Index, ECF No. 29-3 at

12-17.

On January 4, 2021, the Court advised plaintiff about his obligation to file an opposition

to defendant's summary judgment motion by February 15, 2021.  On February 2, 2021, plaintiff

filed instead a motion for a more specific *Vaughn* Index, further indexing, and a stay pending a

ruling on said motion, ECF No. 32 (hereafter "*Vaughn* Index Mot."), which defendant opposed

on February 16, 2021, ECF No. 33.  By Minute Order of March 1, 2021, the Court denied

plaintiff's motion and gave him until April 9, 2021, to file an opposition to the summary

judgment motion.  On March 19, 2021, plaintiff filed a reply in further support of his *Vaughn*

---

[1]  EOUSA processes "FOIA and Privacy Act requests for access to records and case files located in [that] office and 94 United States Attorney's offices ("USAOs") throughout the nation[.]" Hudgins Decl. ¶ 1.

Index motion, ECF No. 34, but he has neither filed a separate opposition to defendant's summary judgment motion nor requested additional time to do so.

## II.  LEGAL STANDARD

The FOIA authorizes a district court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  This case, like a "vast majority" of FOIA cases, *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011), can be decided on summary judgment.

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Rather, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer*, 692 F.2d at 771.  Otherwise, "'uncontradicted, plausible

affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.'" *Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (alteration omitted)).

On summary judgment, the district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a) (4)(B), "to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents," *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), and only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

### III.  DISCUSSION

Plaintiff criticizes defendant for failing to provide an index containing an enumeration of each page found responsive to his FOIA request. *See Vaughn* Index Mot. at 4 (asserting that "none of [the responsive] records were provided a specific identifying number such as a bates number"). But in meeting its burden under FOIA, an agency "may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools." *Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 26-27 (D.D.C. 2019) (internal quotation marks and citation omitted). "Any measure will adequately aid a court if it provides a relatively detailed justification, specifically identifies the reasons why a particular exemption is relevant and correlates those claims with the particular part of a withheld document to which they apply." *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (internal quotation

marks, alterations and citation omitted).  "[T]there is no set form for a *Vaughn* index[.]" *Schoenman v. FBI*, 604 F. Supp. 174, 196 (D.D.C. 2009) (citing *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979)).  It need only fulfill the purpose of enabling "the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions." *Jud. Watch, Inc.*., 449 F.3d at 150.

Here, the *Vaughn* Index coupled with the declaration are more than adequate to "permit meaningful review and adversarial testing of [the] exemption claims." *James v. Drug Enf't Admin.*, 657 F. Supp. 2d 202, 206 (D.D.C. 2009).  Therefore, the Court will address defendant's claimed exemptions along with any discernible challenges asserted in plaintiff's *Vaughn* Index Motion and his Reply.  *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

### A.  FOIA Exemption 3

FOIA Exemption 3 covers matters that are "specifically exempted by statute . . . provided that such statute either (A) [requires withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  Defendant invoked this exemption to withhold grand jury information.  Hudgins Decl. ¶ 25.  The "statute" applicable to the grand jury information is Federal Rule of Criminal Procedure 6(e), which requires secrecy for grand jury proceedings.  Rule 6(e) qualifies as a statute for purposes of Exemption 3 because it was affirmatively enacted by Congress.  *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F. 2d 856, 867-68 (D.C. Cir. 1981).  Rule 6(e) bars disclosure of information

that would "tend to reveal some secret aspect of the grand jury's investigation such . . . as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987) (internal quotation marks omitted).

Defendant withheld "grand jury transcripts that included information presented in front of the grand jury, and documents that identified the details of the proceedings, including the grand jury witnesses and questions that were presented to the grand jury by federal prosecutors." Hudgins Decl. ¶ 25.  Since the disclosure of such records would surely reveal secret aspects of the investigation, summary judgment is warranted on the Exemption 3 withholdings.

### B.  FOIA Exemption 5

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 contains two main privileges applicable here: the attorney work-product privilege and the deliberative process privilege.

The attorney-work product privilege covers material that "can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998) (internal citation and quotation marks omitted).  The privilege's purpose is to protect the adversarial trial process by insulating attorneys' preparations from scrutiny.  *See Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 142 (D.D.C. 2013) ("[T]he purpose of the privilege is to encourage effective legal representation *within the framework of the adversary system* by removing counsel's fears that his thoughts and information will be invaded by his adversary.") (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978)

(emphasis in original)).  Accordingly, the attorney work-product privilege "should be interpreted broadly and held largely inviolate." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005).

The deliberative process privilege is intended to "prevent injury to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  More specifically, the privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  To that end, the privilege protects "documents and other materials that would reveal advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  For the privilege to apply, the government must establish that the material at issue is both "predecisional" and "deliberative" in nature. *Id*.  "A document is predecisional if it was prepared in order to assist an agency decision maker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)).  Basically, a document is deliberative in nature if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.

Defendant fully withheld as attorney work product the "Case Notes" of the Assistant United States Attorney (AUSA) who handled plaintiff's prosecution, *Vaughn* Index at 1, including "the prosecution memoranda, draft pleadings and case trial preparation notes," Hudgins Decl. ¶ 31.  This was proper.  *See Judicial Watch*, 432 F.3d at 371 ("The circuit's case law is clear that the work-product doctrine simply does not distinguish between factual and deliberative material; therefore, if a document is fully protected as work product, then segregability is not required.") (internal quotation marks, alterations, and citations omitted)). Defendant also applied both the attorney work product privilege and the deliberative process privilege to "draft documents and pleadings" that "differed from the final filing produced," Hudgins Decl. ¶ 34, including a "Draft Plea Agreement," an "Interagency working draft" of a Crime Lab Report, and "Internal draft communication [to the Public Defender] that was not sent to outside counsel," *Vaughn* Index at 2-3.  To the extent that certain documents were withheld solely as deliberative process records that, unlike work product, are not categorically protected from all disclosure, Hudgins attests that "a harm assessment on all notes and documents" was conducted and "[h]andwritten notes found on documents that did not present a harm in release were released to the requester."  Decl. ¶ 36.  Accordingly, summary judgment is warranted on the Exemption 5 withholdings.

### C.  FOIA Exemptions 6 and 7(C)

Defendant withheld third-party information under FOIA's personal privacy Exemptions 6 and 7(C).  Hudgins Decl. ¶ 40.  Although both exemptions are properly invoked, the Court will address only Exemption 7(C) since it is without question that plaintiff's request for records pertaining to his criminal case satisfies the threshold law enforcement requirement of Exemption 7.  *See* 5 U.S.C. § 552(b)(7) (protecting from disclosure "records or information compiled for

law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . ." would cause certain enumerated harms); *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester] explicitly sought records related to his own criminal prosecution"); *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need" to consider Exemption 6 separately "[i]f the information withheld . . . was 'compiled for law enforcement purposes,' thus implicating [e]xemption 7(C)").

In enacting FOIA, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy interests." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 766 (1989). As a direct outgrowth of this concern, Congress crafted Exemption 7(C), which permits agencies to withhold from disclosure records compiled for law enforcement purposes if the disclosure of such records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). And "[a]s a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell*, 646 F.3d at 41.

In assessing an agency's claim under Exemption 7(C), the district court must look to the balance of the privacy interests asserted and the public interest in disclosure. *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006). As a general matter, the identification of an individual "in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation," *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987); therefore, "[a]bsent exceptional circumstances, the balance [of interests] categorically favors withholding the names . . . of third parties," as such information is not probative of an agency's performance of its

statutory responsibilities, *Mays v. Drug Enforcement Admin*., 234 F.3d 1324, 1327 (D.C. Cir. 2000).  Further, "the Supreme Court has made clear that requests for [ ] third party information are strongly disfavored[,]" particularly "when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution." *Blackwell*, 646 F.3d at 41 (internal quotation marks and citations omitted).  Thus, the only relevant question is "whether [plaintiff] has shown government misconduct sufficient to overcome Exemption 7(C)'s protection for personal privacy under the test outlined in [*Favish*]." *Id*. (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)).

Defendant redacted "the names and identifying information relating to third parties" and the "direct telephone numbers and email" of "law enforcement personnel involved in the litigation[.]" Hudgins Decl. ¶ 40.  The declarant plausibly explains why disclosure of such information could "subject [the] individuals to an unwarranted invasion of their personal privacy" or "to harassment or harm." *Id*.  Plaintiff does not dispute the withholdings per se. Instead, he faults defendant for "not explain[ing] what steps" were taken "to determine if the individuals they asserted [privacy] interests for are living or deceased." *Vaughn* Index Mot. at 3. But plaintiff has cited neither evidence nor authority that would trigger such an obligation in this case.  Although the D.C. Circuit "has squarely rejected the proposition that FOIA's protection of personal privacy ends upon the death of the individual depicted," *Accuracy in Media, Inc. v. Nat'l Park Serv.,* 194 F.3d 120, 123 (D.C. Cir. 1999), an individual's death "is a relevant factor in the balancing in which the agency engages when it determines whether to withhold or release the [deceased's] material," *Johnson v. Exec. Off. for U.S. Att'ys,* 310 F.3d 771, 775 (D.C. Cir. 2002).  Therefore, it is only when the agency withholds third-party information to protect the deceased individual's personal privacy that it must confirm that it "took certain basic steps to

ascertain whether [the] individual was dead or alive." *Schrecker v. U.S. Dep't of Just.,* 254 F.3d 162, 167 (D.C. Cir. 2001); *see Campbell v. Dep't of Justice,* 164 F.3d 20, 33 (D.C. Cir. 1998) ("A court balancing public interests in disclosure against privacy interests must . . . make a reasonable effort to account for the death of a person *on whose behalf* the [agency] invokes Exemption 7(C).") (citations omitted) (emphasis added))).

Nothing suggests that defendant's withholding decisions rested on "the death of an individual," much less one "whose privacy interest provide[d] the rationale for [the] 7(C) FOIA exemption." *Johnson,* 310 F.3d at 775; *see Piper v. U.S. Dep't of Justice.,* 428 F. Supp. 2d 1, 4 (D.D.C. 2006), *aff'd sub nom. Piper v. Dep't of Just.,* 222 Fed. App'x 1 (D.C. Cir. 2007) (finding "no reason to think anyone named [in FOIA request] is deceased under the 100 year [presumptive death] standard"). Further, plaintiff's failure to offer any evidence of a public interest to balance against the individuals' significant privacy interests is alone self-defeating. *See Piper*, 428 F. Supp. 2d at 3-4 (finding no merit to argument concerning the death of third parties where the plaintiff "presented no public interest indicating that third party privacy interests should be compromised, whatever the status of the individual") (citing *Favish*, 541 U.S. at 172)). Accordingly, summary judgment is warranted on the withholdings under Exemption 7(C).

### D.  Record Segregability

The Court is required to make a finding as to whether defendant has shown that it released all reasonably segregable non-exempt information. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (placing an "affirmative duty" on the district court to address record segregability). " 'The question of segregability is subjective based on the nature of the document in question, and an agency must

provide a reasonably detailed justification rather than conclusory statements to support its claim

that the non-exempt material in a document is not reasonably segregable.' " *Rosenberg v. U.S.*

*Dep't of Immig. and Customs Enforcement*, 959 F. Supp. 2d 61, 73 (D.D.C. 2013) (quoting

*Cater, Fullerton & Hayes LLC v. Fed. Trade Comm'n*, 520 F. Supp. 2d 134, 146 (D.D.C. 2007)

(other citation omitted)).

Hudgins attests that in addition to the examination performed by other "members of the

Staff," she personally examined each responsive page "line-by-line . . . to identify non-exempt

information which could reasonably be segregated and released," and that all reasonably

segregable records were released to plaintiff.  Hudgins Decl. ¶ 46.  As found above, defendant

properly withheld complete documents under Exemption 5, and plaintiff does not dispute that

volume two of the joint appendix filed in the Fourth Circuit is a sealed record that EOUSA

cannot disclose "without [that] Court's permission."  *Vaughn* Index at 1 & Ex. C.  Therefore, the

Court is satisfied that defendant has disclosed all reasonably segregable non-exempt

information.[2]

**E. Adequacy of the Search**

Finally, plaintiff contends that the *Vaughn* index fails to "detail what documents were

originally located," which "records are duplicative," and to "differentiate between records

withheld in full or simply duplicative[.]" *Vaughn* Index Mot. at 3.  But as defendant counters,

the index "does not identify any records as duplicates," Opp'n at 2, and plaintiff's speculation

about such records does not suffice to defeat summary judgment.  With respect to the located

documents, moreover, Hudgins attests that "USAO-NCE personnel conducted a search" of "the

---

[2]    Defendant released a copy of plaintiff's pre-sentence report ("PSR"), which the non-party
Bureau of Prisons returned pursuant to its regulation prohibiting inmates from possessing such
documents.  *See* Hudgins Decl. ¶ 29 & Ex. B.

CaseView system," utilizing the search terms of "Rajahn Brown" and "Brown," and located "the Rajahn Brown criminal case file," Decl. ¶ 10, the contents of which are adequately described in the *Vaughn* Index. *See also id.* ¶ 11 (describing CaseView as "the general repository system" for U.S. Attorney's Offices "to track cases opened in their districts" and to "determine the location of all physical case files," which in this case "relat[ed] to Plaintiff"). So, to the extent that the adequacy of the search is questioned, defendant has shown that "its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Court concludes that defendant has fully satisfied its obligations under the FOIA and is entitled to judgment as a matter of law. A separate Order accompanies this Memorandum Opinion.

_____s/s_____
COLLEEN KOLLAR-KOTELLY
DATE:   August 5, 2021          United States District Judge